IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TK HOLDINGS INC., *et al.*, | ) | Case No.  17-11375 (BLS) |
| | ) | |
| Debtors. | ) | |
| ——————————————— | ) | |
| TK HOLDINGS INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. Pro. No.  17-51886 (BLS) |
| | ) | |
| STATE OF HAWAI'I, by its Office of Consumer | ) | |
| Protection, GOVERNMENT OF THE UNITED | ) | |
| STATES VIRGIN ISLANDS, STATE OF NEW | ) | |
| MEXICO, *ex. rel.* HECTOR BALDERAS, | ) | |
| Attorney General, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

RICHARDS LAYTON & FINGER, P.A.
Russell C. Silberglied, Esq.
One Rodney Square
920 N. King Street
Wilmington, DE  19801

*Counsel for Debtors*

MACAULEY LLC
Thomas G. Macauley, Esq.
300 Delaware Avenue, Suite 760
Wilmington, DE  19801

Mimi Y. Liu, Esquire
MOTLEY RICE, LLC
401 9th Street NW, Suite 1001
Washington, DC 20004

*Counsel for the State of Hawai'i
and the Government of the United
States Virgin Islands*

WEIL, GOTSHAL & MANGES LLP
Marcia L. Goldstein, Esq.
Theodore E. Tsekerides, Esq.
767 Fifth Avenue
New York, NY 10153

*Counsel for Debtors*

DiCELLO LEVITT & CASEY LLC
Daniel R. Ferri, Esq.
Ten North Dearborn Street, 11th Floor
Chicago, IL  60602

*Counsel for the State of New Mexico*

# OPINION[1]

Before the Court is the Motion for Summary Judgment (the "Motion") [Adv. Pro. Docket No. 2] filed by TK Holdings Inc. ("TKH") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors").  By the Motion, the Debtors seek a declaration that certain pre-petition claims asserted by the United States Virgin Islands, Hawai'i and New Mexico (collectively referred to hereinafter as the "States") in three separate prepetition lawsuits (as described more fully below, the "State Actions") are dischargeable.  Specifically, the question before the Court is whether claims for relief brought by the States under their respective consumer protection statutes (on account of fraud alleged to have perpetrated upon citizens of the States by the Debtors) may be discharged under Bankruptcy Code § 1141(d)(6).  For the reasons stated below, the Court finds that the claims of the States may be discharged by operation of a confirmed plan of reorganization.[2]  The Debtors' Motion will be granted.

## I. BACKGROUND

### A.    General

The Debtors, together with their overseas affiliates (hereinafter referred to collectively as "Takata"), comprise one of the world's largest manufacturers and distributors of automotive safety systems.  The record reflects that Takata serves or has served as a supplier to nearly every major automobile manufacturer in the world.  Since its founding over 80 years ago, Takata has designed and sold a range of automotive products and parts that includes seat belts, steering

---

[1]    This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 7052, 9014(c).  As this is a core proceeding, the Court possesses constitutional an statutory authority to enter a final order in this matter.

[2]    The Court notes that the Debtors' Plan (as defined and described *infra*) is scheduled for a confirmation hearing in the coming days, but has not been confirmed by the Court as of the date hereof.

wheels, child restraint systems and electronic sensor systems.  And Takata also designs, manufactures and sells vehicle airbag systems.

In the most general terms, automotive airbag systems are designed to rapidly inflate upon impact to cushion or protect vehicle passengers from injury, and then to rapidly deflate.  These systems use inflators that contain pyrotechnic propellants, stored high pressure gases, or a combination of the two which, when activated, rapidly release gases to inflate an airbag.  The record reflects that Takata sold airbag inflators containing phase-stabilized ammonium nitrate (the "PSAN Inflators").

Reports of driver and passenger injuries from defective or explosive deployment of airbags prompted federal regulators and certain automobile manufacturers ("Original Equipment Manufacturers" or "OEMs") to investigate and ultimately initiate extensive vehicle recalls in the United States and abroad at the direction of the National Highway Traffic Safety Administration ("NHTSA").  The PSAN Inflators are the subject of the largest product recall in history.  The record reflects that over 60,000,000 PSAN Inflators in the United States and more than 64,000,000 PSAN Inflators outside of the United States have been recalled or will be subject to recalls based on announced schedules.

In addition to the obligations owed to NHTSA in connection with the recalls, on January 13, 2018, Takata Corporation, a Japanese corporation that is these Debtors' ultimate corporate parent (hereinafter "TKJP") entered into a plea agreement with the United States Department of Justice (the "DOJ").  The U.S. Attorney's Office for the Eastern District of Michigan announced and submitted to the United States District Court for the Eastern District of Michigan a plea agreement (the "Plea Agreement") whereby TKJP pled guilty to wire fraud in violation of 18

U.S.C. § 1343 and agreed to pay a criminal fine of $25 million. That fine was paid on March 29, 2017.

Pursuant to the Plea Agreement and a restitution order promulgated thereunder, TKJP committed to make, either directly or through its affiliates and subsidiaries, the following payments (the "Restitution Payments"):  (a) $125 million payable to the DOJ to compensate individuals who suffered (or will suffer) personal injury caused by the rupture of a PSAN Inflator; and (b)  $850 million payable to automobile manufacturers within five (5) days after the closing of a sale of Takata, which sale must occur by no later than February 27, 2018. Takata timely made the $125 million Restitution Payment set forth in clause (a). However, payment of the Restitution Payment described in clause (b) is dependent upon closing and receipt of proceeds from a sale transaction embodied in the Debtors' proposed plan of reorganization. The Debtors have represented that if the remaining Restitution Payment is not satisfied in full within five (5) days of February 27, 2018, the DOJ retains the right to withdraw the Plea Agreement and to pursue criminal charges and penalties above and beyond those set forth in the Plea Agreement and to bring charges and penalties against all Takata entities, including the Debtors.

**B.    The Bankruptcy Proceedings**

On June 25, 2017 (the "Petition Date"), each of the Debtors commenced in this Court a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

On July 7, 2017, the Office of the United States Trustee appointed a statutory committee of unsecured creditors and a statutory committee of tort claimant creditors. Subsequently, the

Case 17-51886-BLS    Doc 27    Filed 02/14/18    Page 5 of 16

Court, pursuant to §§ 105 and 1109(b) of the Bankruptcy Code, appointed Roger Frankel as the

legal representative (the "Future Claimants' Representative") for individuals who sustain injuries

related to PSAN Inflators after the Petition Date. [Docket No. 703]. No bankruptcy trustee or

examiner has been appointed in these Chapter 11 cases.

### (i)  The Plan

The Debtors have filed a Joint Plan of Reorganization (the "Plan") [Docket No. 1108]

and an accompanying Disclosure Statement [Docket No. 1164]. By Order dated January 5, 2018

[Docket No. 1639], this Court approved the Disclosure Statement and authorized the Debtors to

proceed with solicitation of votes on the Plan.

The Debtors' Plan contemplates[3] the sale of nearly all of their business operations to

Joyson Key Safety Systems, Inc. ("KSS") pursuant to Bankruptcy Code §§ 363(f) and 1123(a)(5).

KSS will not be purchasing the Debtors' operations and assets relating to (i) the manufacture of

PSAN Inflators and (ii) the support of the massive recall program described above. Under the

Plan, Reorganized Takata will emerge from bankruptcy and will service the recall effort for a

stated period of time. The Plan also proposes that claims against the Debtors and certain OEMs

arising from allegedly defective airbag deployment will be channeled to a trust on a post-

confirmation basis.

### (ii)  The State Actions

The State Actions allege that Takata and certain OEMs engaged in unfair or deceptive

acts or violated consumer protections laws by making false or misleading statements regarding

---

[3]      The Debtors' Plan is an intricate and complex document that is built around an extensive series of
transactions. The Court here only describes the Plan and the reorganization strategy in the very broadest terms to
provide a measure of context.

5

the safety characteristics of PSAN Inflators and/or by concealing their defect from the public.  As described in detail below, each of the State Actions seeks monetary and injunctive relief on account of the marketing and sale of allegedly defective PSAN Inflators to the citizens of the respective states.

On May 13, 2016, the State of Hawai'i, by its Office of Consumer Protection, filed a complaint styled *State of Hawai'i v. Takata Corporation, et al.*, Civ. No.  16-1-0922-05 (the "Hawai'i Complaint") against TKH, TKJP, and several Honda entities in Hawai'i state court asserting causes of action for unfair or deceptive actions or practices pursuant to Hawai'i Revised Statute chapters 480 and 487 and applicable Hawai'i common law, seeking a permanent injunction barring Takata "from engaging in their unfair and deceptive conduct," civil penalties per violation in accordance with H.R.S. §§ 480-15, restitution, and disgorgement.  *See generally* Adv. Pro. Docket No. 4 Ex. A (Hawai'i Complaint).

The Hawai'i Complaint charges Takata with "misrepresenting and withholding material information from the public . . ."  *Id*. at ¶46.  Hawai'i further contends that "[a]s a result of the aforementioned unfair or deceptive acts and omissions, Takata was able to continue manufacturing Takata Airbags and selling them to automobile manufacturers, which, in turn, installed the unsafe Takata Airbags in their vehicles and sold and/or leased the vehicles to unsuspecting members of the public, including Hawai'i consumers."  *Id*. at ¶47.  Among other requests for relief, the Hawai'i Complaint seeks penalties of $10,000 for each Takata Airbag sold or leased in Hawai'i, and injunctive relief barring future violations of the law.

On May 25, 2016, the Government of the United States Virgin Islands (the "USVI") filed a complaint styled *Government of the USVI v. Takata Corporation, et al.*, Case No.  ST-16-CV-

286 (the "USVI Complaint") against TKH, TKJP, and several Honda entities in USVI state court

asserting causes of action under certain USVI consumer protection laws and related statutes,

seeking civil penalties, administrative fines, restitution, disgorgement, and an injunction

requiring the defendants to cease their alleged violations of the law and to expand their public

education efforts. *See generally* Adv. Pro. Docket No. 4 Ex. B (USVI Complaint). Specifically,

the USVI Complaint alleges that Takata made, marketed, and used airbag inflators that it knew

were prone to rupture and posed a risk to automobile occupants. *See id.* at ¶66. Simultaneously

with the filing of the USVI Complaint, the USVI also filed a motion for an injunction requiring

Takata to place money into a court-administered escrow account to pay any potential monetary

relief. Adv. Pro. Docket No. 4 Ex. C.

      The USVI Complaint seeks to redress injuries to its citizens, alleging that Takata acted

"with an intent to defraud, or in the alternative, recklessly or negligently misled consumers by

failing to disclose material facts." Adv. Pro. Docket No. 4 Ex. B at ¶154. The USVI Complaint,

similar to the Hawai'i Complaint, seeks imposition of civil penalties and fines, disgorgement and

injunctive relief.

      On March 30, 2017, the State of New Mexico filed its amended complaint styled *State of

New Mexico v. Takata Corporation, et al.*, Case No. D-101-CV-2017-00176 (the "New Mexico

Complaint") against TKH, TKJP, and multiple OEMs in New Mexico state court alleging that

the defendants violated New Mexico's Unfair Practices Act (N.M. Stat. Ann. § 57-12-1, et seq.).

Adv. Pro. Docket No. 4 Ex. D. New Mexico alleges that the Debtors' conduct exposed "its

citizenry to severe and unconscionable risk of serious injury or death due to inflator rupture from

a device meant to protect them from injury and death." *Id.* at ¶311. The New Mexico Complaint

seeks "disgorge[ment of] all profits [] illegally obtained by and through illegal conduct, and used

to further fund or promote the illegal conduct or that constituted capital available for that

purpose," as well as $5,000 per defective airbag inflator that entered into New Mexico and

$5,000 a day for each day that the Debtors allegedly hid or obscured the defects in the airbag

inflators. *Id.*

### (iii)    Adversary Proceedings

On July 13, 2017, the Debtors commenced an adversary proceeding styled *TK Holdings,*

*Inc., et al. v. State of Hawai'i, et al.*, Adv. Pro. No.  17-50880 (BLS).  In that action, the Debtors

sought an injunction to stay the prosecution of the State Actions and a multitude of other

lawsuits.  By Orders dated August 22, 2017 and November 27, 2017 [Adv. Pro.  No. 17-50880,

Docket Nos. 63 and 160],  this Court granted the Debtors' request to hold the State Actions and

most other litigation in abeyance during these Chapter 11 proceedings.

The present adversary proceeding was commenced by the Debtors against the States on

December 20, 2017.  By this suit, the Debtors seek a declaration that the claims raised in the

State Actions may be discharged by operation of the Debtors' Plan, if confirmed.  The parties

have stipulated to present the dispute in the context of summary judgment, and briefing and

argument on the Motion has been completed.[4]  The matter is ripe for decision.

## II.  JURISDICTION, VENUE AND LEGAL STANDARD

The Court has jurisdiction over these jointly administered Chapter 11 cases and this

adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order

of Reference from the United States District Court for the District of Delaware, dated February

---

[4]      By Order dated January 29, 2018 [Adv. Pro. Docket No. 24], the Court authorized certain OEMs to
intervene in this adversary proceeding.

29, 2012.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(I) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Applicable Legal Standard**

      Rule 56 of the Federal Rules of Civil Procedure, made applicable to this action by Rule

7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be

granted whether the moving party demonstrates that there are no genuine issues of material fact

in dispute and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c)

(standing that a party is entitled to summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled judgment as a matter of law"); *accord Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "The standard for granting summary judgment on

a request for a declaratory judgment is the same as for any other type of relief."  *Cloverland-*

*Green Spring Dairies, Inc. v. Pennsylvania Milk Mktg. Bd.*, 298 F.3d 201, 210, n.12 (3d Cir.

2002) (citing Fed. R. Civ. P. 57; *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d

691 (1963); *Gen. Comm. Of Adjustment, United Transp. Union v. CSX R.R.*, 893 F.2d 584, 586,

589 (3d Cir. 1990)).

      The Supreme Court of the United States has stated that summary judgment procedure is

"an integral part of the Federal Rules as a whole . . . designed 'to secure [a] just, speedy, and

inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

(internal citations omitted).  As such, on a motion for summary judgment, the moving party bears

the initial burden of making a *prima facie* showing of entitlement of the relief sought.  *Id*.  Upon

making such a showing, the burden then shifts to the non-moving party to "go beyond the

pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (internal citations omitted).  The non-moving party must "do more than simply show that there is some metaphysical doubts as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence of which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

### III.  THE PARTIES' POSITIONS

The Debtors contend first that, since the State Actions have been brought to recover for harms suffered by citizens of the States (but not the States themselves), their claims are not for debts "owed to a domestic governmental unit."  Further, the Debtors argue that for claims to be non-dischargeable in a corporate Chapter 11 case, they must arise from losses suffered by the States on account of reliance upon the Debtors' alleged fraudulent conduct or false representations.  Since each of the State Actions alleged fraud upon their citizens but not upon the States themselves, Debtors' reason that the narrow exception contained in Bankruptcy Code § 523(a)(2) has not been met.  Finally, Debtors stress that the claims articulated in the State Actions are accurately described as civil fines and penalties within the scope of Bankruptcy Code § 523(a)(7), which are dischargeable in a corporate case.

The States respond that the consumer protection statutes that form the basis of the State Actions give them standing to pursue claims for fraud upon their citizens, and that any judgment or award arising from these suits would be "owed" to the States within the meaning of § 1141(c)(6).  Next, the States dispute that they must show an actual pecuniary loss on account of

the fraud.  Put simply, the States contend that the State Actions seek recovery by the States on account of the Debtors' fraudulent conduct, which should meet the requirements of the statute. Finally, the States submit that a finding by this Court that their claims are dischargeable would reward or protect wrongful conduct and render the bankruptcy system "a haven for wrongdoers." *See* States Ans. Br. at 12 [Adv. Pro. Docket No. 9].

## IV.  DISCUSSION

The Court starts with first principles.  One of the animating purposes of the Bankruptcy Code is to afford debtors the opportunity to obtain a discharge from their debts.  *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998); *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995) (exceptions to discharge are "strictly construed against creditors and liberally construed in favor of debtors"). It is an equally fundamental proposition that all debts are susceptible to discharge unless those debts are specifically identified by Congress as excluded from discharge.  In § 523(a), Congress has identified nineteen separate categories of debts as to which an individual debtor may be denied a discharge.  11 U.S.C. § 523(a)(1)-(19).

The analysis is dramatically different for a corporate debtor, however.  A corporate debtor's opportunity for discharge is much broader than that of an individual debtor: only one of the nineteen exceptions to discharge is given effect in the context of a corporate debtor who has managed to obtain confirmation of a plan.  Specifically, § 1141(d)(6)(A) provides as follows:

> (6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt –
>
> (A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute[.]

11 U.S.C. § 1141(d)(6)(A).

As a threshold matter, the Debtors contend that the claims articulated by the States are not debts "owed to a domestic government unit."  Because each of the States seeks redress for harms alleged to have been suffered by citizens of the States, the Debtors reason that the debts here are not truly owed to the States, but instead to consumers in the States.

The Court disagrees.  It is undisputed that each of the consumer protection statutes and related laws relied upon by the States afford standing and authority to the States to pursue the actions on behalf of their citizens.  *See* Hawai'i Complaint at ¶2; USVI Complaint at ¶12; New Mexico Complaint at ¶32.  And it is likewise undisputed that, if the States were to pursue their lawsuits and obtain judgments, those judgments would constitute obligations owed to the States, not to a citizen or a collection of individual citizens.  Accordingly, the Court concludes that the claims brought in the State Actions are debts "owed to a domestic governmental unit" within the scope of Bankruptcy Code § 1141(d)(A).

The Court looks next to § 523(a)(2)(A) and (B); as noted, these are the only statutory exceptions to discharge that Congress has applied to reorganized corporations.  These sections provide as follows:

> (a)    A discharge under Section 727, 1141, 1228(a), 1128(b) or 1328(b) does not discharge an individual debtor from any debt –
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> > > > (B) use of a statement in writing –
> > > > > (i)  that is materially false;

(ii)  respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(A), (B).

The question here is whether the claims asserted by the States are of a "kind specified in" § 523(a)(2)(A) or (B).  There is no allegation by the States that the Debtors made false representations to, or committed fraud upon, the States.  Instead, the States allege that the Debtors' alleged conduct occurred with respect to their citizens, not with respect to the States.

The United States Supreme Court has strictly construed § 523(a)(2) to require a showing that the false or fraudulent representations must be made by a debtor to the affected creditor and that the creditor must have relied on those statements and suffered damages thereby.  *Field v. Mans*, 516 U.S. 59, 69 (1995); *see also* 8 Collier on Bankruptcy 1141.05(1)(b)(i) (16th Ed. 2017) ("Significantly, to succeed on a claim under subsection 523(a)(2)(A), the governmental unit must demonstrate that it justifiably relied on the debtor's false pretenses, false misrepresentations or fraud.").  In the present case, there is no allegation or contention that any of the States received or relied upon the Debtors' alleged false statements.

The States respond that the statute does not require them to have directly suffered a pecuniary loss; instead, they need only demonstrate that the claims raised in the State Actions sound in fraud.  In support of their position, the States rely on a series of cases where courts have found that fraud claims brought by governmental or regulatory authorities under consumer protection statutes fall within the scope of § 523(a)(2).  *See e.g.*, *In re Garner*, 515 B.R. 643, 650

(Bankr. M.D. Fla. 2014) (state's claim for money judgment and civil penalties for violation of consumer protection laws is non-dischargeable); *In re Audley*, 268 B.R. 279, 285 (Bankr. D. Kan. 2001) (aff'd, 275 B.R. 383 B.A.P. 10th Cir. 2002) (same); *see also* States Ans. Br. at 8-9 (listing cases).

In each of the cases referenced above, however, the debtor was an individual, not a corporation.  Thus the fraud claim was not dischargeable, irrespective of whether it was brought by a state or by the individual citizens who were actually defrauded.  In the present case, there is no question that the Debtors (as corporations) may obtain a discharge from claims of individuals for the precise conduct that forms the basis of the State Actions.  The Debtors contend that the States' claims do not meet the requirements of § 1141(d)(6)(A) because the Debtors' alleged conduct was perpetrated against consumers, not the States.  And more to the point, the Debtors contend that to hold the States' claims to be non-dischargeable while discharging identical claims of consumers would improperly elevate the States' claims in derogation of the Bankruptcy Code.

It is a basic proposition that, for non-dischargeability to come into play, a creditor must rely or act upon the false or fraudulent statement and suffer loss thereby.  Simply demonstrating that a debtor made a false statement will not yield a determination of non-dischargeability where, for example, the debt was incurred before the statement was made or before the creditor was exposed to the false representation.  *See In re Giarratano*, 358 B.R. 106, 110-111 (Bankr. D. Del. 2004) ("To prevail in seeking exception to a debtor's discharge of debt under Section 523(a)(2)(A), a party must prove:  (1) the debtor obtained money through representations which the debtor knew to be false; (2) the debtor possessed an intent to deceive; (3) the creditor

justifiably relied on the false representation; and (4) the creditor sustained damages as a result of the false misrepresentations.").

As noted, the fraud claims here are plainly susceptible to discharge if they were brought by the individual citizens alleged to have been harmed by the Debtors' actions. Debtors contend, and the Court agrees, that to hold the States' claims to be non-dischargeable would improperly elevate those claims in contravention of the priority and distribution scheme embodied in the Bankruptcy Code. Where the governmental unit is the actual victim of a corporate debtor's fraudulent conduct or representations, Congress has precluded a discharge. But if the fraud is perpetrated not upon the government but on citizens and consumers, the requirements of § 523(a)(2) are not satisfied.[5]

The Court's conclusion is buttressed by analysis of another provision governing exceptions to discharge. In § 523(a)(7), Congress provided that an individual debtor is not discharged from a claim "to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a government unit, and is not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). Crucially, Congress did not choose to include § 523(a)(7) in identifying claims from which a corporate debtor may not receive a discharge.

Review of the complaints filed in the State Actions reveals that the claims articulated fall squarely within the statutory framework of § 523(a)(7). Civil fines and penalties imposed by a

---

[5]     In contending that the States need not establish that they were the actual victims of fraud, the States rely on decisions allowing guardians or administrators of decedents' estates to prosecute non-dischargeability actions. *See In re Hendry*, 428 B.R. 68 (Bankr. D. Del. 2010) (estate administrator bringing fraud-based non-dischargeability action); *In re Davis*, 194 F.3d 570 (5th Cir. 1999) (estate administrator/widow of victim killed by debtor). The Court concludes that these cases are inapposite to the case at bar, as the administrators stand perfectly in the shoes of the injured creditor, and have no independent right or authority to bring an action or claim other than in a representative and derivative capacity. Were the States in fact acting here in a capacity analogous to the estate administrators in the decisions cited, it is likely that the claims would not satisfy the "debt . . . owed to a governmental unit" prong of Bankruptcy Code § 1141(d)(6)(A).

governmental entity, and unrelated to its own actual losses, may be discharged in a confirmed corporate Chapter 11 plan. *United States v. WRW Corp.*, 986 F.2d 138, 144 (6th Cir. 1993) ("the only provision of § 523(a) which might except the fine or penalty from discharge is § 523(a)(7)."); *People v. Hatcher (In re Hatcher)*, 111 B.R. 696, 700-01 (Bankr. N.D. Ill. 1990) (penalty debts fail within section 523(a)(7) as opposed to 523(a)(2)(A)).

## V.  CONCLUSION

For the reasons stated above, the Court will GRANT the Debtors' Motion and determine that the claims articulated in the State Actions may be discharged pursuant to 11 U.S.C. § 1141 upon confirmation of a plan of reorganization.  The Court requests that the parties confer and submit an appropriate form of judgment order within seven (7) days of the date hereof.


**BY THE COURT:**


Dated: Wilmington, Delaware
      February 14, 2018
                    Brendan Linehan Shannon
                    Chief United States Bankruptcy Judge

16